IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRUCE F. JOHNSON and<br>JUDY E. JOHNSON,<br><br>    Plaintiffs,<br><br>   v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | No. 05 C 1013 |

**MEMORANDUM OPINION AND ORDER**

On their income tax returns for 1995 and 1996, Bruce F. Johnson and Judy E. Johnson paid income tax deficiencies and interest related to those tax deficiencies to the Internal Revenue Service ("IRS"). Plaintiffs later filed amended tax returns seeking a refund based on the ground that they were entitled to deduct interest they had paid to the IRS during those years. The IRS rejected the plaintiffs' claims for refund for 1995 and 1996 and this suit followed. Plaintiffs presently seek income tax refunds for 1995 and 1996 in the amounts of $513,644 and $152,767, respectively, in addition to statutory interest. Both parties have filed cross motions for summary judgment. For the following reasons, plaintiffs' motion is denied and defendant's motion is granted.

I.

The following facts are undisputed. Plaintiffs are husband and wife. From 1970 through at least 1992, Mr. Johnson was a professional commodity trader on the Chicago Mercantile Exchange. He maintained large trading positions in agricultural and other commodities, including gold, silver, copper, foreign currencies, Treasury bonds and bills, as well as engaging in domestic and foreign commodity straddle transactions. Straddle transactions were a common gain deferral mechanism in the commodities industry in the 1970s and early 1980s. This allowed professional commodity traders to defer their trading gains to later years.

In determining their taxable income on their 1978 and 1980 tax returns as originally filed, plaintiffs' gross income was partially offset by claimed straddle losses from the London Metal Exchange ("LME"). The plaintiffs' claimed losses were disallowed by the Tax Court in *Johnson v. Commissioner*, T.C. Memo 1992-369 (1992). The disallowance of the claimed LME commodity straddle losses increased plaintiffs' taxable income as reported on their original returns by eliminating the claimed straddle losses as an offset to their other income. This resulted in deficiencies for the 1978 and 1980 tax years in the amounts of $336,013 and $568,298, respectively.

During 1984 and 1985, Mr. Johnson also held a passive investment in a real estate limited partnership, Wilkes Barre

Associates, Ltd. He held a partnership interest in Wilkes Barre Associates, Ltd. and a related real estate partnership, Wilkeswood Associates, Ltd. The IRS examined Wilkeswood Associates' partnership returns for the years 1983-1986 and made certain adjustments at the partnership level that flowed through to Wilkes Barre Associates. In turn, those adjustments flowed through to the partners in Wilkes Barre, including Mr. Johnson. This eliminated some of the losses originally offset against plaintiffs' income from other sources and resulted in a deficiency in plaintiffs' income tax for 1984 and 1985 of $36,930 and $23,118, respectively.

During the years 1995 and 1996, plaintiffs paid income tax deficiencies and interest related to those tax deficiencies to the IRS for the years 1978, 1980, 1984, and 1985. The amount of deficiency interest paid by plaintiffs to the IRS during 1995 was $1,782,092 and the amount of deficiency interest paid by them to the IRS during 1996 was $343,423. On October 14, 1998, plaintiffs filed an amended income tax return (Form 1040X) for 1995 with the IRS claiming a refund based on the ground that they were entitled to deduct interest they had paid to the IRS during that year. On October 4, 1999, plaintiffs filed an amended income tax return (Form 1040X) for 1995 and 1996 with the IRS amplifying the grounds set forth in their first amended returns for those years. The plaintiffs' first and second amended income tax returns for 1995 and 1996 set forth their position that their interest payments

during those years to the IRS are deductible under sections 163(h)(2)(A) and 163(h)(2)(C) of the Internal Revenue Code of 1986 notwithstanding Temporary Treasury Regulation Section 1.163-9T(b)(2)(i)(A). On November 14, 2002, the IRS rejected the plaintiffs' claims for refund for 1995 and 1996.

II.

Summary judgment is appropriate where the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 502 (7th Cir. 2004); FED. R. CIV. P. 56(c). I must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

III.

The parties dispute whether the interest paid by plaintiffs as individual taxpayers constitutes non-deductible personal interest, or deductible "interest paid or accrued on indebtedness properly allocable to a trade or business" under 26 U.S.C. § 163(h)(2)(A). Section 163(h) of the tax code disallows a deduction for personal interest paid by a tax payer other than a corporation. 26 U.S.C. § 163(h). The section also states that the term "personal interest" does not include "interest paid or accrued on indebtedness properly allocable to a trade or business." 26 U.S.C.

4

§ 163(h)(2)(A). Section 163(h), however, is ambiguous as to whether the interest paid on an underpayment of individual income tax qualifies under this section when the interest paid is on tax liability arising from adjustment to reported income from an individual's non-corporate trade or business. *See, e.g., Kikalos v. Comm'r of Internal Revenue*, 190 F.3d 791, 797 (7th Cir. 1999) (citation omitted) (statute "supplies no test for determining which debts are 'properly allocable' to a business and which are not.") In turn, the Treasury Department has issued regulations implementing the provisions of § 163(h). Treasury Regulation § 1.163-9T(b)(2)(i)(A) ("the Regulation") provides that all interest "[p]aid on underpayments of individual Federal, State or local income taxes . . . regardless of the source of the income generating the tax liability" is non-deductible. 26 C.F.R. § 1.163-9T(b)(2)(i)(A) (1987).

Plaintiffs challenge the validity of § 1.163-9T(b)(2)(i)(A). First, they argue it contradicts the plain meaning and legislative history of the statute. Second, plaintiffs contend that the Treasury's issuance of the Regulation without following routine notice and comment procedures eschews the usual deference to which regulations promulgated by a federal agency are entitled under *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

Plaintiffs' first argument has already been rejected by the Seventh Circuit. *See, e.g., Kikalos,* 190 F.3d at 797-99 ("We see nothing in the temporary regulation that is inherently irrational or in conflict with the statutory treatment of interest. . . . [N]othing in the statute points inevitably to [an] alternate construction."). Similarly, the Fourth, Fifth, Sixth, Eighth and Ninth Circuits have found the regulation consistent with the statutory framework and its legislative history. *See, e.g., Alfaro v. Comm'r of Internal Revenue,* 349 F.3d 225, 230-31 (5th Cir. 2003); *McDonnell v. United States*, 180 F.3d 721, 723 (6th Cir. 1999); *Allen v. United States*, 173 F.3d 533, 537-38 (4th Cir. 1999); *Redlark v. Comm'r of Internal Revenue*, 141 F.3d 936, 941-42 (9th Cir. 1998); *Miller v. United States*, 65 F.3d 687, 690-91 (8th Cir. 1995). Plaintiffs' arguments concerning the statutory text and legislative history, having been previously addressed in the case law, fail to compel a departure from such findings. Instead, plaintiffs distinguish these cases on the ground that they all improperly applied *Chevron* deference when examining the regulation.

The Regulation at issue was promulgated in 1987 by the Commissioner of Internal Revenue, pursuant to the congressional grant of general rulemaking authority reflected in 26 U.S.C. § 7805(a). *Kikalos*, 190 F.3d at 795-96. It was issued without prior

notice and comment. *Id*. Plaintiffs argue, based on dictum in *Kikalos,* that it is not entitled to any more deference "than a proposed regulation." *Id*. at 796. *Kikalos* predates *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001) (setting forth the framework for determining the appropriate degree of deference afforded to informal regulations), and *Barnhart v. Walton*, 535 U.S. 212, 221-22 (2002) (citing *Chevron*, 467 U.S. at 843) ("the fact that the Agency previously reached its interpretation through means less formal than 'notice and comment' rulemaking . . . does not automatically deprive that interpretation of the judicial deference otherwise its due").

In this case, the defendant argues that the Regulation is entitled to *Chevron* deference in light of *Barnhart*. The Court in *Barnhart* noted that factors such as "the interstitial nature of the legal question, the related expertise of the Agency, the importance of the question to administration of the statute, the complexity of that administration, and the careful consideration the Agency has given the question over a long period of time all indicate that *Chevron* provides the appropriate legal lens through which to view the legality of the Agency interpretation [] at issue." 535 U.S. at 222. All of these factors weigh in favor of defendant's position here. *See Alfaro*, 249 F.3d at 320 n.20 (quoting *Chevron*, 467 U.S. at 843). This would also mean the Seventh Circuit's *Chevron* analysis of the Regulation in *Kikalos* is controlling.

7

Even assuming the Regulation is not subject to *Chevron* deference, it would still be entitled to some deference under *Mead*. 533 U.S. at 227-28; *see also U.S. Freightways Corp. v. Comm'r of Internal Revenue*, 270 F.3d 1137, 1141 (7th Cir. 2001). Under *Mead*, courts consider "the degree of the agency's care, its consistency, formality, and relative expertness, and . . . the persuasiveness of the agency's position." 533 U.S. at 228. Once again, the majority of these factors weigh in defendant's favor. In particular, the Regulation has been in place since 1987; there is consistency among the federal courts of appeal regarding its interpretation; the Treasury Department has "relative expertness" and its position is persuasive in light of the legislative history of the statute. Specifically, Congress' Joint Tax Committee has endorsed the Regulation *post hoc*. *See, e.g.*, Staff of the Joint Comm. on Taxation, 100th Cong., 1st Sess., General Explanation of the Tax Reform Act of 1986 266 (Comm. Print 1987). Additional congressional actions post-dating the Regulation have not revealed disagreement or conflict with the Regulation's treatment of the statute. *See Alfaro*, 349 F.3d at 230-31. Accordingly, plaintiffs' challenge to the validity of the Regulation fails and I find that plaintiffs are not entitled to income tax refunds for 1995 and 1996.

IV.

For the foregoing reasons, plaintiffs' motion for summary judgment is denied and defendant's motion for summary judgment is granted.

**ENTER ORDER:**

_____

**Elaine E. Bucklo**
United States District Judge

Dated: June 28, 2007